IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT A. MCCAFFERTY,               )
                                    )
                  Plaintiff,        )          2:20-CV-02008-CCW
                                    )
            v.                      )
                                    )
THOMAS W. WOLF,                     )
RACHEL LEVINE,                      )
                                    )
                  Defendants.       )

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Robert McCafferty's Motion for Preliminary Injunction.

ECF No. 13.  For the reasons that follow, Plaintiff's Motion will be DENIED.

## I.     Background

In this case, Plaintiff Robert McCafferty, owner of North Country Brewing Company ("North Country"),[1] challenges certain orders issued by Pennsylvania's Governor and Secretary of Health to mitigate the spread of COVID-19 in Pennsylvania.[2]  *See* ECF No. 1 at ¶ 1.  In short, Plaintiff claims that Defendants, through their mitigation orders and press statements, have unlawfully discriminated against bars and restaurants, including those operated by North Country, by misrepresenting the role played by bars and restaurants in the spread of the COVID-19 virus and by imposing unwarranted and disproportionate restrictions on them when compared to other types of businesses.  *See, e.g., id.* at ¶¶ 2–8.  According to the Complaint, these restrictions have

---

[1] North Country Brewing Company operates three separate locations in the Butler, Pennsylvania, area:  North Country Brew Pub, the Harmony House Inn, and the North Country Canning and Taproom.  ECF No. 44 at ¶ 1;  ECF No. 43 at ¶ 1.

[2] In this action, Plaintiff names both the Governor and Secretary of Health in their official capacities only.  *See* ECF No. 1 (caption).

allegedly caused Plaintiff to sustain substantial monetary losses, forced him to lay off employees, and ultimately threaten the long-term survival of his business. *See id.* at ¶¶ 96–103.

Based on these allegations, Plaintiff's Complaint asserts claims under 42 U.S.C. § 1983 for alleged violations of (1) the Equal Protection Clause of the Fourteenth Amendment (Count I); (2) procedural due process under the Fourteenth Amendment (Count II); (3) substantive due process under the Fourteenth Amendment (Count III); and (4) the Fifth Amendment Takings Clause (Count IV). *See* ECF No. 1. Plaintiff seeks a declaration that Defendants' mitigation orders are unconstitutional; temporary and permanent injunctive relief barring enforcement of Defendants' mitigation orders; and damages. *See id.*

In this Motion, Plaintiff asks the Court to enter an order "enjoining Defendants and all other[s] acting on their behalf from declaring or enforcing any prohibition on indoor dining, or any Order subjecting Plaintiff to greater restrictions than those imposed upon other business establishments, pending final judgment of this Court." ECF No. 14 at 18. Plaintiff's Motion is premised on Counts I–III of his Complaint. *See* ECF No. 14. The Court held an evidentiary hearing on Plaintiff's Motion on March 3, 2021. *See* ECF Nos. 34 (Minute Entry) and 45 (Hearing Transcript). In addition to himself, Plaintiff called Ms. Janine Simmons, Director of Operations for North Country Brewing Company, to testify. *See* ECF No. 21. Defendants called Mr. Peter Blank, Policy Director for the Pennsylvania Department of Health. *See* ECF No. 22. All three witnesses testified credibly. Following the hearing, the parties submitted updated findings of fact and conclusions of law, ECF Nos. 43 and 44, and Plaintiff's Motion is now ripe for disposition.

## II.    Summary of Relevant Facts

On March 6, 2020, Governor Wolf issued a Proclamation of Disaster Emergency under 35 Pa.C.S. §§ 7101, *et seq*., related to the ongoing COVID-19 global pandemic. *See* ECF No. 43 at ¶ 2. Governor Wolf renewed the Proclamation on June 3, August 31, November 24 of 2020, and,

most recently, on February 19, 2021. *See id.* at ¶ 3. Under the Proclamation, Defendants have issued various mitigation orders over the past year aimed at slowing the spread of COVID-19 within the Commonwealth. *See* ECF No. 43 at ¶ 6; *see also, e.g.,* ECF No. 13-3 (March 19, 2020, mitigation orders). As of today, only the November 17, 2020 order that requires universal face coverings and the November 23, 2020 mitigation orders remain in effect.[3] *See* ECF No. 43 at ¶ 4; ECF No. 44 at ¶¶ 17, 19; ECF Nos. 13-6 and 13-7 (November 23, 2020 mitigation orders, referred to collectively herein as the "November 23 Orders").[4] Plaintiff does not challenge the November 17 mask mandate, *see* ECF No. 43 at ¶ 5, so, for the purposes of Plaintiff's Motion, only the November 23 Orders are at issue.

As discussed in more detail below, Defendants amended their November 23 Orders on April 4, 2021, lessening the restrictions applicable to certain kinds of businesses, including restaurants and bars.[5] The April 4, 2021, amendments to the November 23 Orders are referred to together herein as the "Amended November Orders."

In addition to restrictions imposed on other types of businesses, *see, e.g.,* ECF No. 13-6 at Sections 2–8 (setting out specific restrictions on gyms, salons, museums, etc.), the November Orders limited indoor dining to 25% of a bar or restaurant's stated fire code maximum occupancy

---

[3] The November 23 orders rescind prior mitigation orders. ECF No. 44 at ¶ 6. Furthermore, limited-time mitigation orders, issued on November 23 and December 10, which prohibited indoor service at bars and restaurants for specified periods around the Thanksgiving and December holiday season, expired by their own terms at midnight on November 23, 2020 and January 4, 2021 respectively. *See* ECF No. 43 at ¶ 7; ECF No. 44 at ¶¶ 15, 21; ECF No. 45 at 121:19–25, 128:22–129:2.

[4] Note that the Governor's order of November 23 and the Secretary of Health's order of November 23 impose virtually identical restrictions on bars and restaurants, and are therefore considered in tandem for the purposes of this Motion. *Compare* ECF No. 13-6 at Section 7 *with* ECF No. 13-7 at Section 7.

[5] *See Amended Order of the Governor of the Commonwealth of Pennsylvania for Mitigation, Enforcement, and Immunity Protections,* https://www.governor.pa.gov/wp-content/uploads/2021/04/2021.4.1-TWW-v2-amended-mitigation-enforcement-immunity-order.pdf (last visited Apr. 6, 2021); *Order of the Acting Secretary of the Pennsylvania Department of Health Amending the November 23, 2020 Order of the Secretary of the Pennsylvania Department of Health for Mitigation and Enforcement,* https://www.governor.pa.gov/wp-content/uploads/2021/04/2021.4.1-Amendment-to-Order-of-the-Secretary-Mitigation-and-Enforcement.pdf (last visited Apr. 6, 2021).

(including staff);  prohibited bar seating;  required customers to be seated at a table;  required alcohol (if consumed on-site) to be purchased in the same transaction as a meal;  required sales of alcoholic beverages to cease at 10:00 p.m. (for restaurants) or 11:00 p.m. (for bars);  and required bars and restaurants to comply with other mitigation measures, such as face coverings and physical distancing.  *See* ECF No. 43 at ¶ 8;  ECF No. 44 at ¶ 17;  ECF Nos. 13-6 and 13-7.  That said, bars and restaurants could enroll in the "Open & Certified Pennsylvania" program, administered by the Pennsylvania Department of Community and Economic Development, by self-certifying compliance with program requirements, such as guidelines issued by the Centers for Disease Control ("CDC"), social distancing, and mask wearing;  once enrolled, they could increase their indoor dining capacity to 50% of the stated fire code maximum—just like gyms, museums, and spas.  *See* ECF No. 43 at ¶ 10;  *see also* ECF No. 13-6 at Sections 4–7.

The Amended November Orders lessened the restrictions on bars and restaurants.  *See* Amended November Orders at Section 7.  Bars and restaurants are now allowed to operate at 50% of their maximum occupancy under the fire code (including staff) and may serve patrons seated at a bar.  *See id.*  Furthermore, the requirements that on-site sales of alcohol cease by a certain time (i.e. earlier than otherwise provided by law), or that alcohol be served in the same transaction as a meal, have been eliminated.  *Id.*  Finally, establishments that enroll in the Open & Certified Pennsylvania program may increase their indoor capacity to 75% of the state fire code maximum. *See id.*

According to testimony provided by Pennsylvania Department of Health Policy Director Mr. Blank at the evidentiary hearing on Plaintiff's Motion, the restrictions mandated in the Defendants' mitigation orders, including the operative Amended November Orders, were developed through a collaborative process between policy makers and medical and scientific

experts.  *See* ECF No. 43 at ¶¶ 47, 51;  *see also* ECF No. 45 at 60:2–61:9.  This process includes

considering various indicators (case counts, hospitalization rates, death rates), guidance from the

CDC, and scientific and medical research publications.  *See id.* at ¶¶ 48–49.  Importantly, though,

the COVID-19 virus has an incubation period up to 14 days long, which means that much of the

data relied on by policy makers in formulating the Commonwealth's mitigation strategies are

lagging indicators and that the effects of any mitigation order are not immediately felt.  *See id.* at

¶¶ 19–21, 50.[6]  Mr. Blank testified that the goal of the mitigation orders is "to save lives and to

prevent an overwhelming capacity issue within our hospitals."  ECF No. 45 at 76:13–15;  ECF No.

43 at ¶ 53.

According to medical and scientific experts, the COVID-19 virus is primarily spread

through respiratory droplets.  *See* ECF No. 43 at ¶ 23.  Thus, given that the use of face masks (such

as multi-layer cloth masks) is an effective means of inhibiting the spread of COVID-19, *see id.* at

¶¶ 24–25, eating and drinking indoors at a bar or restaurant carries increased risk (compared to,

for example, retail shopping) because individuals (1) must remove their masks to eat and/or drink

and (2) tend to "dwell" (i.e. remain seated in one place) for extended periods of time.  *See id.* at ¶¶

27–35.  As such, Defendants imposed capacity and other restrictions on all bars and restaurants,

*see id.* at ¶ 38–39, including certain limited time orders meant to mitigate risk during periods when

---

[6] Indeed, a March 5, 2021 publication from the CDC "found that allowing on-premises restaurant dining was associated with an increase in daily COVID-19 case growth rates 41–100 days after implementation and an increase in daily death growth rates 61–100 days after implementation."  ECF No. 43 at ¶ 36.  While Defendants could not have relied on this publication for their November 23, 2020 mitigation orders, the CDC's March 5, 2021 publication underscores the fact that virus tracking data on any given day is reflective of policies in effect weeks beforehand. Thus, while it may be true, as Plaintiff points out, that COVID-19 "cases in the Commonwealth continued to rise while bars and restaurants were shut down,"  ECF No. 44 at ¶ 26, this is in no way surprising or unexpected—the scientific evidence (like the CDC's March 5, 2021 publication) indicates that the effect of such a closure would not be reflected in case counts until weeks or months later.  *See* ECF No. 43 at ¶ 54 (noting that "[s]ince the issuance of the November 23, 2020 Orders, case counts in Pennsylvania have dropped substantially.").

bar crowds are increased, such as the winter holiday season. *See* ECF No. 45 at 121:19–122:1 (discussing order closing bars and restaurants the night before Thanksgiving).

According to Plaintiff, North Country has suffered financially because of the mitigation orders. *See, e.g.,* ECF No. 44 at ¶¶ 9–11; ECF No. 15 at ¶¶ 8, 11–12. Plaintiff's estimate of his losses is based on a comparison of sales for 2019 (i.e. pre-pandemic) with sales for 2020, losses attributable to food waste and spoilage, and increased relative labor costs due to staff turnover. *See* ECF No. 15 at 8, 11–12; ECF No. 43 at ¶ 14; ECF No. 45 at 37:11–14, 52:11–15. Furthermore, Plaintiff suggested that "if things don't go well, it's going to be tough to make it to May [2021]," ECF No. 45 at 36:4–6, and both Plaintiff and Ms. Simmons projected that, without relief, North Country would not survive "next winter." ECF No. 45 at 35:6–9; 53:7–17. Notwithstanding those projections, and although Plaintiff reported that his establishments all comply with the required mitigation measures, *see* ECF No. 44 at ¶¶ 13–14, Plaintiff has not, to date, elected to enroll any of his establishments in the Open & Certified Pennsylvania program, which, pursuant to Amended November Orders, would allow Plaintiff to operate his establishments at up to 75% of the stated fire code maximum occupancy. *See* ECF No. 43 at ¶ 11.

## III.    Standard of Review

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008); *Greater Phila. Chamber of Commerce v. City of Phila.*, 949 F.3d 116, 133 (3d Cir. 2020) (courts should grant preliminary injunctions only in "limited circumstances"); *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989). Four factors inform a court's decision as to the issuance of a preliminary injunction:

> (1) The likelihood that the plaintiff will prevail on the merits at final hearing; (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction

is issued;  and (4) [that] the public interest [weighs in favor of granting the injunction.]

*** 

Generally, the moving party must establish the first two factors and only if these "gateway factors" are established does the district court consider the remaining two factors.  The court then determines "in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief."

*Greater Phila. Chamber of Commerce*, 949 F.3d at 133 (citations omitted));  *see also Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017), *as amended* (June 26, 2017) (citing *Del. River Port Auth v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 919–20 (3d Cir. 1974));  *Ace Am. Ins. Co. v. Wachovia Ins. Agency Inc.,* 306 Fed.Appx. 727, 732 (3d Cir. 2009);  13 Moore's Federal Practice – Civil § 65.22 (2020).

To establish a likelihood of success on the merits, the movant must "demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not)."  *Reilly*, 858 F.3d at 179;  *see also*, 42 Am. Jur. 2d Injunctions § 18 (2020) (explaining that to obtain a preliminary injunction, the movant must show that it is "reasonably likely" to succeed on the merits.).  That is, "the moving party must produce sufficient evidence to satisfy the essential elements of the underlying cause of action."  *Sutton v. Cerullo*, Civil No. 3:CV-10-1899, 2014 U.S. Dist. LEXIS 110116, at * 13 (M.D. Pa. Aug. 8, 2014) (citing *Punnett v. Carter*, 621 F.2d 578, 582–83 (3d Cir. 1980)).  And, the burdens of proof as to the substantive merits of a claim "track the burdens at trial."  *Gonzales v. O Centro Espirita Beneficente Uniao de Vegetal*, 546 U.S. 418, 429 (2006).

"A failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction."  *Ace Am. Ins. Co.*, 306 Fed.Appx. at 732 (citations omitted).  To establish irreparable harm, the movant must show "that it is more likely than not to suffer irreparable harm in the absence of preliminary relief."  *Reilly*, 858 F.3d at 179.  To do so, the movant "must

7

demonstrate a potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air*, 882 F.2d at 801. The risk of irreparable harm cannot be speculative; "mere risk" of irreparable harm is insufficient—the movant must make a "clear showing of immediate irreparable injury, or a presently existing actual threat; [an injunction] may not be used simply to eliminate the possibility of a remote future injury, or a future invasion of rights[.]" *Holiday Inns of Am. v. B & B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969); *Continental Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980); *Hadeed v. Advanced Vascular Res. of Johnstown, LLC*, Case No. 3:15-cv-22, 2016 U.S. Dist. LEXIS 169709 at *8 (W.D. Pa. Dec. 8, 2016).

"In the absence of exceptional circumstances, economic loss does not qualify as irreparable harm [and] '[a]n inability to precisely measure financial harm does not make that harm irreparable or immeasurable.'" *Hadeed*, 2016 U.S. Dist. LEXIS 169709 at *7–8 (quoting *Acierno v. New Castle Cty.*, 40 F.3d 645, 655 (3d Cir. 1994)); *see also*, *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.").

## IV. Discussion

### A. Plaintiff Has Not Demonstrated a Likelihood of Success on His Equal Protection Claim (Count I)

First, Plaintiff claims that Defendants have unlawfully discriminated against bars and restaurants (as opposed to other types of businesses) in violation of the Equal Protection Clause of the Fourteenth Amendment. *See, e.g.,* ECF No. 1 at ¶¶ 111–113; ECF No. 14 at 7–10.

To maintain a claim for an alleged violation of the Equal Protection Clause where, as here, no suspect classification is in play (i.e. race, sex, religion, national origin), "a plaintiff must allege

that (1) the defendant treated him differently from others similarly situated, (2) the defendant did

so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Bor.*

*of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (discussing *Vill. of Willowbrook v. Olech*, 528 U.S.

562, 564 (2000)).

### 1.    Applicable Level of Scrutiny

There has been some debate as to whether, when considering pandemic-related government

actions, courts should apply modern tiers of scrutiny or the highly deferential "no real or substantial

relation" test articulated by the Supreme Court in *Jacobson v. Massachusetts*, 197 U.S. 11, 31

(1905). *See M. Rae, Inc. v. Wolf,* 2020 U.S. Dist. LEXIS 241961, at *12–*16 (M.D. Pa. Dec. 23,

2020) (reviewing positions taken by various courts).  However, because rational basis review

would normally apply to Plaintiff's "class of one" Equal Protection claim, *see Olech*, 528 U.S. at

564, and because we agree with those courts who have concluded that the *Jacobson* test and

rational basis review are essentially equivalent levels of scrutiny, *see M. Rae*, 2020 U.S. Dist.

LEXIS 241961 at *15–*16, we need not wade any further into that debate here and will apply the

more familiar rational basis test.  Our result would be the same under Jacobson's "no real or

substantial relation" test.

Under rational basis review, government policy will be upheld "'if there is any reasonably

conceivable state of facts that could provide a rational basis' for the differing treatment." *Newark*

*Cab Assoc. v. City of Newark*, 901 F.3d 146, 156 (3d Cir. 2018) (quoting *United States v. Walker*,

473 F.3d 71, 77 (3d Cir. 2007)); *see also Belle Garden Estate, LLC v. Northam,* Civil Action No.

7:21-cv-00135, 2021 U.S. Dist. LEXIS 57609 (W.D. Va. Mar. 26, 2021) ("The rational basis test

is extremely forgiving to the state--proper application rarely results in invalidation of state law. As

the Supreme Court has put it, 'the Court hardly ever strikes down a policy as illegitimate under

rational basis scrutiny.  On the few occasions where we have done so, a common thread has been

that the laws at issue lack any purpose other than a "bare . . . desire to harm a politically unpopular

group."'  *Trump v. Hawaii,* 138 S.Ct. 2392, 2420 (2018)").

### 2.   Discussion

Here, Plaintiff has not demonstrated that he is likely to succeed in proving that Defendants

treated his business, North Country, differently from similarly situated businesses.  First, the

evidence shows that Defendants' mitigation orders, including the Amended November Orders

(which are the only applicable mitigation orders currently in effect), applied equally to all bars and

restaurants in Pennsylvania.  *See* ECF No. 43 at ¶ 39.  Second, Plaintiff did not introduce evidence

supporting his contention that other types of businesses (i.e. grocery stores, barbershops, gyms,

etc.), which are subject to different restrictions under the Amended November Orders, are

"similarly situated" to bars and restaurants when it comes to the risk of spreading COVID-19.

Indeed, based on Mr. Blank's testimony and on the scientific and medical research relied

on by Mr. Blank and the team (including medical experts) advising Defendants, *see* ECF No. 43

at ¶¶ 27–35, the Court concludes that bars and restaurants *are not* similarly situated to other types

of businesses, at least with regard to indoor dining and COVID-19 restrictions.  Eating and

drinking necessarily require patrons to remove their masks, thereby creating a heightened risk of

transmission that does not exist at other types of businesses where masks can be worn at all times.

Mr. Blank also testified about the extended dwell time at restaurants and bars, noting that "as

individuals…gather at restaurants or bars for meals and drinking, those individuals remain together

for longer periods of time than perhaps other retail establishments." ECF No. 45 at 74:7–11.  These

critical differences between bars and restaurants as opposed to other types of businesses are

directly relevant to their differing treatment under Defendants' mitigation orders.  Specifically, the

scientific and medical consensus is that the COVID-19 virus is spread by respiratory droplets and mask-wearing is an effective means of reducing transmission risk, while, on the other hand, remaining in close proximity with others indoors for extended periods of time, particularly unmasked, increases transmission risk.  ECF No. 43 at ¶¶ 22–29.  On each of these factors—the ability of patrons to wear masks and maintain social distancing, as well as the typical length of time patrons spend in proximity with each other in the establishment, *see* ECF No. 45 at 74:7–16—indoor dining and drinking present risks to public health and safety that other types of retail establishment simply do not.  As such, Defendants' treatment of bars and restaurants is rationally and directly related to Defendants' goal of limiting deaths and preventing hospitals from being overwhelmed due to the spread of COVID-19.  Plaintiff has not demonstrated a likelihood of success on the merits of his Equal Protection claim.

> **B.**    **Plaintiff Has Not Demonstrated a Likelihood of Success on His Procedural Due Process Claim (Count II)**

Next, Plaintiff challenges Defendants' mitigation orders, and the operative Amended November Orders in particular, on the ground that Defendants have not provided business owners with any means of contesting the restrictions imposed by the mitigation orders, in violation of the Due Process Clause of the Fourteenth Amendment.  *See* ECF No. 1 at ¶¶ 133–137;  ECF No. 14 at 10–12.  The Court finds that Plaintiff has not met his burden to demonstrate a likelihood of success on the merits with regard to his procedural due process claim.

To state a claim for deprivation of procedural due process, a plaintiff "must allege that they were deprived of an interest 'encompassed within the Fourteenth Amendment's protection of life, liberty, or property,' and that available procedures 'did not provide due process of law.'"  *Ass'n N.J. Rifle & Pistol Clubs v. Governor of N.J.*, 707 F.3d 238, 240 (3d Cir. 2013) (quoting *Hill*, 455 F.3d at 233–34 (internal quotation omitted)).

As a threshold matter, Plaintiff has not satisfied his burden of identifying a right protected by the Due Process Clause that Defendants' mitigation orders impair.  Plaintiff contends that he has "a legitimate entitlement to operate his restaurants, as such is both a property right and a liberty right protected by procedural due process."  ECF No. 14 at 11.  As the Court understands it, Plaintiff claims a right to do business, free from what he considers to be the arbitrary and purposeless restrictions imposed by Defendants' mitigation orders.  *See id.*

However, according to the Supreme Court,

> The assets of a business (including its good will) unquestionably are property, and any state taking of those assets is unquestionably a "deprivation" under the Fourteenth Amendment.  But business in the sense of the activity of doing business, or the activity of making a profit is not property in the ordinary sense.

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 675 (1999). Stated otherwise, "the assertion of a 'general right to do business' has not been recognized as a constitutionally protected right."  *Talleywhacker, Inc. v. Cooper*, 465 F.Supp.3d 523, 541 (E.D.N.C. 2020) (finding no likelihood of success on challenge to COVID-19 restrictions where "plaintiffs fail[ed] to identify a constitutionally cognizable life, liberty, or property interest.") (citing *Coll. Sav. Bank*, 527 U.S. at 675);  *cf. Nekrilov v. City of Jersey City*, Civ. No. 19-22182 (KM) (JBC), 2021 U.S. Dist. LEXIS 57920, at *17–19 (D.N.J. Mar. 24, 2021) (rejecting claim that forward-looking right to pursue short-term rental business is protected under Fourteenth Amendment);  *Ferrone v. Onorato*, Civil Action No. 05-0484, 2006 U.S. Dist. LEXIS 105110, at *35–36 (W.D. Pa. May 26, 2006) (noting that "[i]t is recognized that the procedural due process clause protects *possessory interests* in property" and therefore rejecting due process claim where "Plaintiffs have not alleged that they have been *deprived of a business asset* because of Defendants' conduct, they allege that Defendants *interfered with their business activities*.") (emphasis added).

In other words, while Defendants' mitigation orders no doubt impinge on Plaintiff's ability to operate his business as he sees fit, Plaintiff has not identified a cognizable property interest protected by the Fourteenth Amendment which Defendants' mitigation orders violate. Furthermore, to the extent Plaintiff asserts a protected liberty interest in being able to pursue his chosen occupation, *see* ECF No. 1 at ¶ 133;  ECF No. 14 at 11, such a claim is not cognizable absent a more serious or permanent intrusion. *See Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999) (noting that right to pursue employment is "subject to reasonable government regulation" and distinguishing between "a complete prohibition of the right to engage in a calling, and...the sort of brief interruption which occurred here");  *see also Cole v. Encapera*, 758 Fed.Appx. 252, 255–56 (3d Cir. 2018) (rejecting due process claim on qualified immunity grounds because right to pursue occupation free from brief interruption caused by government action was not clearly established).

Thus, while Plaintiff claims that his asserted liberty and property interests are protected by the Fourteenth Amendment, the Court does not perceive a difference between the rights asserted by Plaintiff and the "general right to do business" rejected by the Supreme Court in *College Savings Bank* or the "generalized…right to choose one's field of private employment" discussed in *Conn*, nor does Plaintiff point the Court to any contrary authority.  As such, Plaintiff has not demonstrated a likelihood of succeeding on the merits of his procedural due process claim.

### 1.      Pre-Deprivation Process

Next, even if Plaintiff had asserted a constitutionally cognizable interest protected by the Fourteenth Amendment, he has not met his burden of establishing a reasonable likelihood of proving that Defendants' mitigation orders failed to satisfy due process under the circumstances.

Although "the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner," *Mathews*, 424 U.S. at 333, "[p]rocedural due

process is 'not a technical conception with a fixed content unrelated to time, place, and circumstance.'" *Benner v. Wolf*, 461 F.Supp.3d 154, 161 (M.D. Pa. 2020) (quoting *Gilbert v. Homar*, 520 U.S. 924, 930 (1997)).  As such, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481(1972). Accordingly, pre-deprivation process is not necessarily required in all situations.  *See, e.g., Elsmere Park Club, L.P. v. Twp. of Elsmere*, 542 F.3d 412, 417 (3d Cir. 2008) ("It is beyond question 'that summary administrative action may be justified in emergency situations.'") (quoting *Hodel v. Va. Surface Mining & Recl. Ass'n*, 452 U.S. 264, 300 (1981).  Indeed, "'[p]rotection of the health and safety of the public is a paramount governmental interest which justifies summary administrative action…deprivation of property to protect the public health and safety is "[o]ne of the oldest examples" of permissible summary action.'" *Id.* at 162 (quoting *Hodel*, 452 U.S. at 300) (citation omitted)).

In *Benner,* the district court determined that the lack of pre-deprivation process related to Governor Wolf's order closing non-essential businesses in March 2020 was not a violation of due process.  *See* 461 F.Supp.3d at 161–62.  Likewise, the court determined that the waiver process implemented by the Commonwealth—whereby businesses categorized as "non-essential" could apply for permission to continue operations, *see, e.g.,* ECF No. 45 at 134:4–9 (example of distillery receiving waiver to operate producing hand sanitizer)—was sufficient post-deprivation process under the circumstances.  *See Benner*, 461 F.Supp.3d at 162–164.  Indeed, the *Benner* court's analysis is consonant with that of district courts across the country, which have generally found that temporary measures implemented to mitigate the COVID-19 pandemic do not offend constitutional due process requirements.  *See, e.g., Xponential Fitness v. Arizona,* No. CV-20-01310-PHX-DJH, 2020 U.S. Dist. LEXIS 123379, at *17 (D. Ariz. July 14, 2020) (no violation

14

where Governor's executive order provided for waiver, even though waiver process had not been implemented);  *Steel MMA, LLC v. Newsom*, Case No. 21-CV-49-CAB-AGS, 2021 U.S. Dist. LEXIS 37709, at *13 (S.D. Cal. Mar. 1, 2021) (no due process violation where restrictions were "legislative in nature"); *Hernandez v. Grisham*, No. Civ. 20-0942 JB\GBW, 2020 U.S. Dist. LEXIS 238477, at *160–161 (D.N.M. Dec. 18, 2020) (collecting cases).

The Court concurs with the analysis of the district court in *Benner*, which found that "the nature of the COVID-19 emergency justifies the lack of pre-deprivation process."  461 F.Supp.3d at 162.  Although that case dealt with business closure and stay-at-home orders from early in the pandemic,  *see id.* at 158–59, the record here shows that the crisis has not abated.  Indeed, "waves" of new cases over the past year have required swift government action to mitigate the spread of the virus, while increased knowledge about how the virus spreads has allowed Defendants to draw a better balance between public health and economic activity.  *See* ECF No. 45 at 92:1–9;  ECF No. 19 at ¶ 5.  With respect to the November 23 Orders, there was a surge in cases during the fall of 2020,  *see* ECF No. 45 at 8–9, which led to "daily COVID-19 cases and hospitalizations in greater numbers than at any other time during this pandemic."  ECF No. 43 at ¶ 16.  This sort of situation is precisely why public health and safety emergencies justify government action without pre-deprivation process:  The necessity of swift action by the government does not allow for the time required to provide individualized process to each person or business affected.  *See Benner*, 461 F. Supp. 3d at 162 (noting that requiring pre-deprivation process "would have rendered ineffective any public health measures meant to combat viral spread.").  As such, the Court is not persuaded that Plaintiff has demonstrated a likelihood of succeeding on the theory that pre-deprivation process was required here.

2.        **Post-Deprivation Process**

The Court also is not persuaded that Plaintiff has demonstrated a likelihood of success in proving that more or different post-deprivation process is required here.  In order "[t]o determine what process is due in a particular situation, courts consider three factors:  first, the private interest at stake;  second, the risk of erroneous deprivation of that interest through the procedures used and the probable value of different procedures;  and third, the government's interest."  *Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 238 (2013) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).  Importantly, at its core, "[p]rocedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property."  *Friends of Devito v. Wolf*, 227 A.3d 872, 889 (Pa. 2020) (finding post-deprivation waiver process sufficient to satisfy due process requirement with respect to March 2020 shut down orders) (quoting *Carey v. Piphus*, 435 U.S. 247, 259 (1978)).

Turning to the *Mathews* factors, the Court finds that the government's interest in preserving the life and health of citizens of the Commonwealth greatly outweighs Plaintiff's private interest in operating his business free from the restrictions imposed by the Defendants' mitigation orders.  Moreover, the risk of erroneous deprivation (i.e. that a person in Plaintiff's position would be wrongfully deprived of his liberty or property interest) is quite low, because the mitigation orders themselves are based on "fairly robust public health research," ECF No. 45 at 64:7, applicable to *all* bars and restaurants.  That is, the scientific consensus indicates that indoor dining creates substantially increased transmission risk because the virus is spread by respiratory droplets and because bar and restaurant patrons must remove their masks and typically remain in relatively close proximity to one another for extended periods.  *See* ECF No. 43 at ¶¶ 23–35.  Indeed, this consensus was reinforced recently in the CDC's March 5, 2021 Morbidity and Mortality Report,

which "found that allowing on-premises restaurant dining was associated with an increase in daily COVID-19 case growth rates." *Id.* at ¶ 36. Furthermore, Plaintiff is not faced with a complete or permanent deprivation of his business: The Amended November Orders (like the earlier November 23 Orders) are temporary and do not prohibit indoor dining. *See* ECF Nos. 13-6, 13-7; *see also* Amended November Orders. These orders also provide a mechanism through which bars and restaurants have been able to self-certify compliance with mitigation measures and obtain permission to operate with higher capacity limits. Plaintiff testified that his establishments complied with all mitigation measures, but that he chose never to apply for the Open & Certified Pennsylvania program, and therefore his restaurants remained at lower capacity limits. *See* ECF No. 45 at 23:4–18, 25:22–26:7, 41:15–18. With all this in mind, the Court is not persuaded that additional, individualized process would protect Plaintiff—or any other bar or restaurant owner— from "mistaken" deprivation under the circumstances.

The Court finds that Plaintiff has not demonstrated a likelihood of success on the merits of his procedural due process claim.

### C.    Substantive Due Process

Finally, Plaintiff asserts in Count III that Defendants' mitigation orders violate substantive due process by unlawfully interfering with Plaintiff's ability to freely operate his businesses and pursue his chosen profession. *See, e.g.*, ECF No. 1 at ¶¶ 158, 161.

"'Substantive due process protects citizens from arbitrary and irrational acts of government.'" *S. Allegheny Pittsburgh Rest. Enters., LLC v. City of Pittsburgh,* 806 Fed.Appx. 134, 142 (3d Cir. 2020) (citation omitted). To prevail on a substantive due process claim, "a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Chainey*

*v. Street,* 523 F.3d 200, 219 (3d Cir. 2008) (citing *United Artists Theatre Circuit v. Twp. of Warrington*, 316 F.3d 392, 400–02 (3d Cir. 2003)).

At the outset, we note that the parties dispute whether the property and liberty interests asserted by Plaintiff in this case fall within the ambit of those fundamental rights protected by substantive due process.  *Compare* ECF No. 14 at 13 *with* ECF No. 20 at 10–11.  Even assuming Plaintiff's asserted property and liberty interests are protected by substantive due process, Plaintiff has failed to demonstrate that he is likely to succeed on the merits of proving that Defendants' COVID-19 mitigation orders "shock the conscience."

Importantly, while "the meaning of this [shocks the conscience] standard varies depending on the factual context," *United Artists*, 316 F.3d at 400, it "encompasses 'only the most egregious official conduct.'"  *Chainey*, 523 F.3d at 219 (quoting *United Artists*, 316 F.3d at 400). Conscience-shocking behavior has been described by the Supreme Court "as 'conduct intended to injure in some way unjustifiable by any government interest,' and conduct 'so "brutal" and "offensive" that it d[oes] not comport with traditional notions of fair play and decency.'"  *S. Allegheny*, 806 Fed.Appx. at 142 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) and *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957)).  Indeed, the Third Circuit has declined to find that government action shocks the conscience where there were no "allegations of corruption, self-dealing, bias against an ethnic group, or additional facts that suggested conscience-shocking behavior."  *Chainey,* 523 F.3d at 220 (citing *Eichenlaub v. Twp. of Ind.*, 385 F.3d 274, 286 (3d Cir. 2004)).

Plaintiff here has not demonstrated a likelihood of surmounting this "high bar."  *S. Allegheny*, 806 Fed.Appx. at 142.  The record shows that Defendants, in light of the scientific and medical information available to them, took considered steps to attempt to mitigate the spread of

a deadly disease, one of which was to impose certain restrictions on the operations of bars and restaurants. Furthermore, Plaintiff has not put forward any evidence to suggest that Defendants' mitigation orders were developed with any improper motive, were the result of corruption, self-dealing, or were otherwise "intended to injure in some way unjustifiable by any government interest." *Id.* As such, Plaintiff has failed to meet his burden to demonstrate a likelihood of success on the merits with regard to his substantive due process claim.

### D.   Plaintiff Has Not Demonstrated He Will Suffer Immediate Irreparable Harm Unless Injunctive Relief is Granted

Even if Plaintiff could establish a reasonable likelihood of success on the merits, a preliminary injunction is still inappropriate because Plaintiff has not demonstrated that he will suffer immediate irreparable harm without an injunction.

Although Plaintiff's injuries are generally couched in financial terms, *see, e.g.,* ECF No. 15 at ¶¶ 8–12, which is not a proper ground for preliminary injunctive relief, *see Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484–85 (3d Cir. 2000) (noting that "the irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages"), Plaintiff contends in his Motion that "Plaintiff is facing the loss and destruction of his entire company, and everything he has worked for over twenty years." ECF No. 14 at 15. On that basis, and citing *Beilowitz v. GMC*, 233 F.Supp.2d 631, 644 (D.N.J. 2002), Plaintiff argues that damages alone are not sufficient and injunctive relief is necessary. *See id.* at 14–15; *see also*, ECF No. 44 at ¶¶ 68–70.

However, for Plaintiff to prevail on his Motion, "more than a risk of irreparable harm must be demonstrated. The requisite for injunctive relief has been characterized as a 'clear showing of immediate irreparable injury,' or a 'presently existing actual threat;' [an injunction] may not be used simply to eliminate a possibility of a remote future injury." *White v. Pompeo*, Civil Action

No. 18-5434, 2019 U.S. Dist. LEXIS 70386, at *6 (E.D. Pa. Apr. 25, 2019) (quoting *Acierno v. New Castle County*, 40 F.3d 645, 655 (3d Cir. 1994)). And, "[t]o be imminent, the injury cannot be remote or speculative; it must be poised to occur before the District Court can hold a trial on the merits." *Par Pharm., Inc. v. Quva Pharm, Inc.*, 746 Fed.Appx. 273, 279 (3d Cir. 2019) (citing *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 263-64 (3d Cir. 2000)).

While Plaintiff correctly points out that, in some cases, the threatened wholesale destruction of a business, even where money damages are available, has been deemed a sufficiently irreparable injury to warrant the entry of injunctive relief, *see, e.g. Beilowitz*, 233 F.Supp.2d at 644–45, this is not that case. In *Beilowitz*, plaintiff-franchisee obtained a preliminary injunction where defendant-franchisor had decided to implement new geographical boundaries on plaintiff's sales territory, such that plaintiff stood to lose approximately 40% of its annual revenue. *See id.* at 645. Stated otherwise, although his alleged injury was financial in nature, plaintiff in *Beilowitz* was faced with certain destruction of his business if defendant was allowed to carry out its plans.

Here, there is no such certainty. The potential loss of part of all of Plaintiff's business is speculative. Indeed, his testimony about the timing and scope of possible future business loss differed significantly from the testimony of his Director of Operations, Ms. Simmons. At the preliminary injunction hearing, Plaintiff initially testified that "I'm really honestly not sure how we're going to make it through *next winter* [2021–2022]". ECF No. 45 at 35:8–9 (emphasis added). Later in the hearing, though, Plaintiff testified that "*if things don't go well*, it's going to be tough to make it to May [2021]." *Id.* at 36:5–6 (emphasis added). In contrast, Ms. Simmons testified that

> If we have another shutdown, we will—we will have to—we will
> have to shut *a location* down. There is no doubt in my mind. We
> cannot handle another one. I give us—*if we have a nice summer,*

> *we'll be fine up until fall [of 2021].*  We will not make it through
> *next winter. . .*

*Id.* at 53:11–15 (emphasis added).  Thus, in contrast to the situation faced by the plaintiff in

*Beilowitz*—where the loss of 40% of his revenue was a certainty if defendant was allowed to

proceed—Plaintiff's alleged prospective irreparable harm is contingent on a number of factors.

 Since the time of Plaintiff's and Ms. Simmons' testimony, no complete closures of

restaurants or bars have occurred, and the Amended November Orders were enacted, increasing

permissible occupancy for restaurants and bars, permitting alcohol to be served without ordering

a meal, and permitting patrons to be served while seated at a bar.  *See* Amended November Orders.

Furthermore, as of April 6, 2021, Pennsylvania moved to Phase 1B of its vaccination program, and

projected that all adult Pennsylvanians would be eligible to be vaccinated by the end of April

2021.[7]  Higher permissible capacity for restaurants and bars, coupled with more widely available

vaccination, will likely increase patronage of restaurants and bars.  In considering the potential

irreparable harm to Plaintiff – possible future loss of part or all of his business – the Court notes

that Plaintiff never availed himself of the Open and Certified Pennsylvania program, which would

have significantly mitigated his past and present monetary losses, and significantly reduced the

likelihood of a potential future loss of part or all of his business.

 The Court recognizes that the negative effects of the COVID-19 pandemic have been

significant for Plaintiff and other restaurant and bar owners.  However, considering all of the

evidence, dissolution of part or all of Plaintiff's business is by no means certain *or* imminent and,

therefore, Plaintiff has not made the requisite showing of irreparable harm.

---

[7] *See Vaccine Rollout Timeline*, https://www.health.pa.gov/topics/disease/coronavirus/Vaccine/Pages/Vaccine.aspx
(last visited April 9, 2021).

**V.        Conclusion**

For the foregoing reasons, Plaintiff's Motion for Preliminary Injunction, ECF No. 13, is

hereby DENIED.

DATED this 9th day of April, 2021.

BY THE COURT:


/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record