IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT A. MCCAFFERTY, | : | |
| Plaintiff | : | No. 2:20-CV-2008 |
| | : | |
| v. | : | Judge Wiegand |
| | : | |
| THOMAS W. WOLF *and* RACHEL LEVINE, | : | Electronically Filed Document |
| | : | |
| Defendants | : | |

**DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendants, Thomas W. Wolf and Alison M. Beam,[1] through their undersigned counsel, pursuant to Local Rule 56.1, hereby submit the within Statement of Material Facts in support of their Motion for Summary Judgment:

1. Plaintiff is the owner and operator of North Country Brewing Company, which owns and operates three establishments: two restaurants, North County Brew Pub and The Harmony Inn; and a taproom and production facility, North Country Canning and Taproom. *Doc. 1, ¶ 9. See also, Tr.*[2] at 6 (1-6).

2. On March 6, 2020, Governor Wolf issued a proclamation of disaster emergency as a result of COVID-19. The proclamation was extended on June 3, 2020, August 31, 2020, November 24, 2020, February 19, 2021, and May 20, 2021. *Doc. 1, ¶ 17. See also, Doc. 19* at ¶ 4; Pennsylvania Governor Proclamations, Website of the Pennsylvania Emergency Management

---

[1] Rachel Levine currently serves as the United States Assistant Secretary for Health. Pursuant to Federal Rule of Civil Procedure 25(d), her successor, is automatically substituted as a party.

[2] "Tr." refers to the transcript of the March 3, 2021 Preliminary Injunction Hearing in this matter, a true of correct copy of which is included in Defendants' attached Appendix of Exhibits as *Exhibit A*.

Agency, https://www.pema.pa.gov/Governor-Proclamations/Pages/default.aspx (last visited 9/12/2021).³

3. The Proclamation of Disaster Emergency was terminated by concurrent resolution of the General Assembly on June 19, 2021. *Id.*

4. On March 16, 2020, Governor Wolf issued an Order requiring restaurants and bars to close their dine-in facilities for fourteen days. *Doc. 1,* ¶ 18.

5. The March 16, 2020, Order was issued for a fourteen-day period to encompass the known incubation period for COVID-19. *Tr.* at 87 (16) – 88 (13).

6. On March 19, 2020, Governor Wolf issued an Order prohibiting the operation of all non-life-sustaining businesses. This Order closed dine-in operations of restaurants and bars but allowed carryout, delivery, and drive-through service to continue. *Doc. 1,* ¶ 19. *See also, Doc. 1-2.*

7. Plaintiff's businesses were permitted to reopen in early June 2020 with indoor dining limited to 50% of the establishment's stated fire code maximum occupancy. *Tr.* at 21 (4-13), 94 (14-19).

8. On July 15, 2020, both Governor Wolf and former-Secretary Levine issued Orders that restricted indoor dining to 25% of the establishment's stated fire code maximum

---

³ Under Fed.R.Evid. 201, courts may take judicial notice of any fact "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed.R.Evid. 201(b). This includes judicial notice of "obvious facts." *Onondaga Nation v. New York*, 500 Fed.Appx. 87, 90 (2d Cir. 2012). Information found on government websites is widely considered both self-authenticating and subject to judicial notice. *Vanderklok v. United States,* 868 F.3d 189 at 250, n 17 (3d Cir. 2017) *citing Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("It is appropriate to take judicial notice of ... information ... made publicly available by government entities[.]"). *See also, Sturgeon v. Pharmerica Corp.,* 438 F.Supp.3d 246 at 258 (2020).

occupancy. *Doc. 1, ¶ 23. See also, Order of the Governor of the Commonwealth of Pennsylvania Directing Targeted Mitigation Measures,* a true and correct copy of which is included in Defendants' attached Appendix of Exhibits as *Exhibit B*; *Order of the Secretary of The Pennsylvania Department of Health Directing Mitigation Measures,* a true and correct copy of which is included in Defendants' attached Appendix of Exhibits as *Exhibit C*.

9. On September 17, 2020, the July 15 Orders were amended to, *inter alia,* increase the limit of indoor dining to 50% of the establishment's stated fire code maximum occupancy. *Amendment to the Order of the Governor of the Commonwealth of Pennsylvania Directing Targeted Mitigation Measures,* a true and correct copy of which is included in Defendants' attached Appendix of Exhibits as *Exhibit D*; *Amendment to the Order of the Secretary of The Pennsylvania Department of Health Directing Mitigation Measures,* a true and correct copy of which is included in Defendants' attached Appendix of Exhibits as *Exhibit E.*.

10. On November 23, 2020, following a resurgence in the COVID-19 case counts, both Governor Wolf and former-Secretary Levine issued mitigation orders that limited indoor dining to 25% of the establishment's stated fire code maximum occupancy. The Orders further restricted bars from operating unless they offered sit-down, dine-in meals or take-out sales. *Tr.* at 68 (20) – 69 (23), 71 (1-) – 72 (3). *See also, Doc. 19* at ¶¶ 6-7; *Order of the Governor of the Commonwealth of Pennsylvania for Mitigation, Enforcement, and Immunity Protections,* a true and correct copy of which is included in Defendants' attached Appendix of Exhibits as *Exhibit F*; *Order of the Secretary of The Pennsylvania Department of Health for Mitigation and Enforcement,,* a true and correct copy of which is included in Defendants' attached Appendix of Exhibits as *Exhibit G.*

11. The November 23, 2020, Orders also imposed restrictions on industries other than the restaurant industry, including gyms and fitness centers, the entertainment industry, and retail businesses. *Tr.* at 124 (24) – 125 (5). *See also, Doc. 19* at ¶ 6; *Exhibits F and G.*

12. The November 23, 2020, mitigation orders incorporated the "self-certification process under the Open & Certified Pennsylvania Program … which would allow restaurants … to increase their indoor capacity from 25 percent to 50 percent, should that establishment choose to follow the requirements in the self-certification process." *Doc. 19* at ¶ 6; *See also, Tr.* 72 (4-10).

13. The self-certification process requires an establishment to "self-certify that they are following CDC guidance for bars and restaurants, that they are following the Department of Health mitigation orders … as well as to communicate and display signages that the individual establishment was participating in this program." *Doc. 19* at ¶ 6; *see also, Tr.* at 72 (21) – 73 (15).

14. The November 23, 2020, mitigation orders were entered in response to "an unprecedented rise in COVID-19 cases across the Commonwealth reaching daily numbers of cases between 8,000, 9,0000, 10,000 a day" with a maximum exceeding "13,000 cases per day." *Tr.* at 69 (24) – 70 (14).

15. It was necessary to place restrictions on the restaurant industry because "when individuals are eating or drinking, they are unable to maintain mask wearing." Additionally, as individuals gather at restaurants or bars, they "remain together for longer periods of time than perhaps other retail establishments." *Tr.* at 73 (16) – 74 (11). *See also, Doc. 19* at ¶¶ 17.

16. Research by the Centers for Disease Control and Prevention and other medical journals have described restaurants to be "high risk environments for the spread of COVID-19." *Tr.* at 74 (12-16). *See also, Doc. 19* at ¶¶18-25. Specifically, studies relied upon by the Department of Health have found:

   a. Restaurants have the largest predicted impact on infections among other non-residential locations that people visit, because of their "high visit densities and long dwell times." *Doc. 19* at ¶ 18;

   b. "adults with confirmed COVID-19 (case-patients) were approximately twice as likely as were control-participants to have reported dining at a restaurant in the 14 days before becoming ill." This finding was attributed, in part, to masks not being able to be worn while eating and drinking and air circulation. *Doc. 19* at ¶¶ 21-22;

   c. "indoor venues, where distancing is not maintained and consistent use of face masks is not possible (e.g., restaurant dining), have been identified as particularly high-risk scenarios." *Doc. 19* at ¶ 23;

   d. A model using mobile-phone data to map people's movements simulated that restaurants at full capacity led to the largest increases in COVID-19 infections. *Doc. 19* at ¶ 24; and

   e. Indoor dining increases the spread of the virus. *Doc. 19* at ¶ 25.

17. On December 10, 2020, Governor Wolf issued an Order prohibiting indoor dining from 12:01 a.m. on December 12, 2020 through 8:00 a.m. on January 4, 2021. *Doc. 1-3*.

18. Plaintiff's business never sought self-certification for any of its three locations. *Tr.* at 41 (15-18).

19. By March 3, 2021, case counts in Pennsylvania had dropped to between "2,000 and 4, 000 daily." *Tr.* at 77 (4-12).

20. On April 1, 2021, the November 23, 2020, mitigation orders were amended to permit indoor dining at 50% of the establishment's stated fire code maximum occupancy, and up to 75% if the business participated in the Open & Certified Pennsylvania Program. *Amended Order of the Governor of the Commonwealth of Pennsylvania for Mitigation, Enforcement and Immunity Protections,* a true and correct copy of which is included in Defendants' attached Appendix of Exhibits as *Exhibit H*; *Order of the Acting Secretary of the Pennsylvania Department of Health Amending the November 23, 2020 Order of the Secretary of the Pennsylvania Department of Health for Mitigation and Enforcement,* a true and correct copy of which is included in Defendants' attached Appendix of Exhibits as *Exhibit I.*

21. As of today, all mitigation orders applicable to restaurants have either expired by their own terms or been rescinded. *Tr.* at 74 (17) – 75 (3). *See also,* "Wolf Administration to Lift Mitigation Orders on Memorial Day, Masking Order Once 70% of Pennsylvania Adults Fully Vaccinated," Website of the Pennsylvania Pressroom, https://www.media.pa.gov/pages/health-details.aspx?newsid=1437 (last visited 9/12/2021).

22. On July 1, 2020, the former-Secretary of Health issued an order requiring universal face coverings. *Order of the Secretary of the Pennsylvania Department of Health Requiring Universal Face Coverings,* a true and correct copy of which is included in Defendants' Attached Appendix of Exhibits as *Exhibit J.* The Order required the wearing of

face coverings, *inter alia,* "in any indoor location where members of the public are generally permitted." *Id.*

23. The Order requiring universal face coverings was updated on November 17, 2020 to require the wearing of face coverings, *inter alia,* "indoors or in an enclosed space, where another person or persons who are not members of the individual's household are present in the same space, irrespective of physical space." *Updated Order of the Secretary of the Pennsylvania Department of Health Requiring Universal Face Coverings,* a true and correct copy of which is included in Defendants' Attached Appendix of Exhibits as *Exhibit K.*

24. On June 28, 2021, the Department of Health lifted its universal masking order. *See* "Department of Health Lifting Universal Masking Order on June 28, Urging Pennsylvanians To Follow Mask-Wearing Guidance Where Required," Website of the Pennsylvania Pressroom, https://www.media.pa.gov/pages/health-details.aspx?newsid=1505 (last visited 9/12/2021).

25. There are three public health approaches to combating a pandemic: (1) mitigation which limits movement among groups of people, (2) containment which involves case investigation and contact tracing to contain the virus from spreading throughout the community, and (3) vaccination. *Tr.* at 60 (2-16). *See also, Doc. 19* at ¶ 29.

26. Mitigation Orders are designed to "save lives and to prevent an overwhelming capacity issue within our hospitals." *Tr.* at 76 (13) – 77 (3).

27. The Department of Health cannot control COVID-19 spread within individual households but "can attempt to put mitigation strategies in place on other establishments such as retail establishments." *Tr.* at 75 (18) – 76 (12).

28. Contact tracing is a public health best practice that involves making contact with individuals who have been directly linked to a disease to determine whether there may have been further exposure and "to issue appropriate public health guidance related to quarantine so that they are not further moving throughout the community, transmitting the disease." *Tr.* at 61 (10) – 62 (8), 89 (14-21). *See also, Doc. 19* at ¶¶ 27-28.

29. While contact tracing is a tool in the Department of Health's toolbox, the data provided by contract tracing itself is not relied upon in implementing mitigation measures. *Tr.* at 62 (19) – 63 (10). *See also, Doc. 19* at ¶ 30.

30. In forming mitigation measures, the Department of Health looks at data such as case counts, public health research as interpreted by medical experts within the Department, scientific studies, CDC recommendations, and the Department's COVID-19 dashboard. *Tr.* at 63 (9) – 64 (7). *See also, Doc. 19* at ¶ 31.

31. Case counts and hospitalization rates are a lagging indicator. *Tr.* at 63 (17-25). *See also, Doc. 19* at ¶ 10.

32. The effectiveness of mitigation measures cannot be seen immediately. *Tr.* at 64 (8-23).

33. COVID-19 is spread through the transmission of respiratory droplets and when a person coughs, sneezes, sings, yells, etc. those respiratory droplets move through the air and potentially infect other individuals that are nearby. *Tr.* 64 at (24) – 65 (15).

34. Masking and social distancing are known to be effective measures to prevent the spread of COVID-19. *Tr.* at 65 (16) – 66 (20). *See also, Doc. 19* at ¶¶ 13, 15

35. The same mitigation measures have always been applied to all indoor dining establishments. *Doc. 19* at ¶ 26.

                                          **Respectfully submitted,**

                                          **JOSH SHAPIRO**
                                          **Attorney General**

                              **By:**   *s/ Karen M. Romano*
                                          **KAREN M. ROMANO**

**Office of Attorney General**        **Chief Deputy Attorney General**
**15th Floor, Strawberry Square**   **Civil Litigation Section**
**Harrisburg, PA 17120**           **Attorney ID 88848**
**Phone: (717) 717-2717**

                                          **SARAH J. SIMKIN**
[kromano@attorneygeneral.gov](mailto:kromano@attorneygeneral.gov)      **Deputy Attorney General**
                                          **Attorney ID 320646**

**Date: September 16, 2021**         **Counsel for Defendants**

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT A. MCCAFFERTY,** | : | |
| Plaintiff | : | No. 2:20-CV-2008 |
| | : | |
| v. | : | Judge Wiegand |
| | : | |
| **THOMAS W. WOLF** *and* **RACHEL LEVINE,** | : | Electronically Filed Document |
| Defendants | : | |

**CERTIFICATE OF SERVICE**

I, Karen M. Romano, Chief Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on September 16, 2021, I caused to be served a true and correct copy of the foregoing document titled Defendants' Statement of Material Facts to the following:

**VIA ELECTRONIC FILING**

**Rebecca L. Black, Esquire**
**101 East Diamond Street, Suite 102**
**Butler, PA 16001**
**rebeccablack@lutzandpawklaw.com**
*Counsel for Plaintiff*

                                          *s/ Karen M. Romano*
                                          **KAREN M. ROMANO**
                                          Chief Deputy Attorney General